IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SPENCER L. WARD                                                PLAINTIFF

v.                                     Civil No. 1:17-cv-01005

NURSE RICE; CAPTAIN MITCHAM;
Union County Detention Center ("UCDC");
SHERI RICE; SERGEANT K. SMITH;
and OFFICER SMITH                                            DEFENDANTS

**ORDER**

This is a civil rights action filed *pro se* by Plaintiff, Spencer L. Ward, under 42 U.S.C. § 1983. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 17). Currently before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 23). Plaintiff has filed a response. (ECF No. 30). The Court finds this matter ripe for consideration.

**I. BACKROUND**

Plaintiff is currently incarcerated in the Bi-State Detention Center in Texarkana, Texas. He filed his original Complaint on January 19, 2017, against Defendants Richard Mitcham,[1] Nurse Rice, Sergeant Kevin Smith and Officer Chris Smith[2] alleging he was retaliated against for submitting grievances, denied his religious freedom, denied equal protected, subjected to numerous unlawful conditions of confinement, and was the victim of excessive force while he was incarcerated at the Union County Detention Center ("UCDC") in El Dorado, Arkansas. (ECF No. 1). In response to this Court's order, on February 8, 2017, Plaintiff filed an Addendum to his Complaint to clarify the claims against

---
[1] Plaintiff refers to Defendant Mitcham as "Mitcheum" throughout his pleadings.
[2] Defendants Kevin Smith and Chris Smith will be referred to as K. Smith and C. Smith throughout this Order.

1

each Defendant. (ECF No. 7). On March 1, 2017, Plaintiff filed a Supplement to his Complaint alleging an additional claim of retaliation by Defendant Rice and additional claims against Defendant Mitcham relating to Plaintiff's religious freedom and equal protection. (ECF No. 12). He is suing Defendants in both their official and individual capacities and seeks monetary damages.[3] (ECF No. 1).

In the Addendum to his Complaint, Plaintiff alleges on or about August 23, 2016, Defendant Rice:

> …was the nurse, who was telling me I couldn't get a medical visit from doctor without being charged. Even under ADC and Federal custody. She was also the nurse telling officer's I couldn't receive a food tray with no-meat diet due to the encounter she had with me. She sent officers to get me several times due to the encounter she had with me. …to discuss this matter about what type of "muslim are you" that you can't eat meat…Ms. Rice still was telling Officers not to come and answer grievances and policys while I was housed in the nurse's station…when I ringed the button to ask Officer O. Reed when [yard call and shower] are giving, Ms. Rice …told this man, "that we don't talk to him We don't even look at him he's not our friend he's just an inmate…

(ECF No. 7, p. 3). Plaintiff also claims Defendant Rice had another MCDC officer "place us, A-pod on lockdown" on February 3, 2017, after Plaintiff refused to allow Defendant Rice to take his temperature. Plaintiff alleges that Defendant Rice then told the other inmates that "it was Spencer Ward's fault that the Pod was going on lock-down." (ECF No. 12, p. 2). Plaintiff claims as a result of the actions of Defendant Rice, he was placed in danger and other inmates threatened him physically. *Id.*

As for Defendant Mitcham, Plaintiff alleges he intimated and used "scare tactics" against him, when Plaintiff attempted to address various issues at the UCDC such as "freedom of religion, the diet I was requesting, Law Library not being properly working. No yard being giving. Not being able to get proper cleaning supplies for the cells and pods." (ECF No. 7, p. 3). He also alleges Defendant Mitcham used "deorgatory language when addressing my civil rights". *Id.* at 3. In addition, Plaintiff alleges

---

[3] In his claim for relief Plaintiff also states "Let detainees and inmates of all Religions have the right to practice and excersize their beliefs not just Christianity while in Union County Jail Facility". (ECF No. 1).

Defendant Mitcham retaliated against him for filing a grievance involving his concern that the shower facilities were too close in proximity to where inmates watched television. Specifically Plaintiff claims:

> On October 1, 2016 I filed a complaint about showers being in view of T.V. violating P.R.E.A. standards. The union county Jail Policies on P.R.E.A. states that anyone who have concerns, inquires about or becomes a victim or witness sexual predatory behavior, All will remain confidentiality to protect all parties, Captain Mitcheum came in A-pod 10-3-16 around 10:15 am….Captain Mitcheum told the entire A-pod that it was Spencer Ward fault that he was back here in A-pod addressing tis matter about the showers and T.V….that when the Captain threating to take the T.V. I had threats on my life, As soon as the Captain shut A-pod door…

(ECF No. 30, p. 3). Plaintiff also claims Defendant Mitcham denied him use of his prayer rug and as a Muslim "this is essential to my faith." (ECF No. 12, p. 3). He also claims Defendant Mitcham "put my Quran somewhere and waited days later just to give me my Quran…" *Id.* Plaintiff asserts this conduct violated his constitutional right to freedom of religion and discriminated against him based on his religion.

Plaintiff states Defendant K. Smith "is a minister of some sort" who would voice his dislike for Muslims and Islam. (ECF No. 7, p. 4). Plaintiff alleges he would speak with Defendant K. Smith about his concerns relating to "hygiene":

> and how the pods tray for food on top were uncovered exposed to open air. My Tray for food being on top with no lid, was the issue's I informed Mr. Smith about. He would just say 'Mr.Ward you want the tray or not'. I would declain the tray and asked to speak with the Lt. Sometimes nobody came and I went without food……he took it upon himself while I was housed in the nurse's station to put me in cell located in booking for no reason other than saying I couldn't push the intercom button located in my cell while all this played out Mr. Smith denied me my yard-call, my law library, no phone asscess and the kiosk machine which was the only way I could document this things…

*Id.*

Finally, Plaintiff alleges Officer C. Smith used excessive force against him on August 22, 2016, when he:

> twisted my arm behind my back with the force of dislocated my shoulder, He put the handcuffs on me so tight the marks around my wrist could be seen 5 five hours later. Now remember this is all just over my food tray being uncovered. The hand cuffs were on me less than 6 six minutes and this was pain like I never felt before. This Officer did this while other Officer was present and no one step in to correct him on his demeanor.

(ECF No. 7, p. 4).

Defendants argue they are entitled to summary judgment because: 1) Plaintiff has not alleged a custom or policy of Union County which resulted in a violation of his constitutional rights; 2) Plaintiff was not engaged in a protected activity and therefore his claim for retaliation fails as a matter of law; 3) Plaintiff was not denied his right to exercise his religious freedom; 4) Plaintiff was not subjected to any unlawful conditions of confinement; and 5) the force used by Defendant Smith was reasonable.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record,

so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Official Capacity Claims

Section 1983 provides a federal cause of action for the deprivation, under color of state law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that a defendant acted under color of state law and they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Union County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a

deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Giving Plaintiff's pleadings the most liberal reading, there are two possible policies of Union County he alleges resulted in a violation of his constitutional rights. The first is his allegation relating to his discussion with Defendant Rice "the nurse, who was telling me I couldn't get a medical visit from doctor without being charged. Even under ADC and Federal custody." (ECF No. 7, p. 3). The law on this issue is clear. Union County's policy requiring inmates to pay for their own medications or treatment, if they can afford to do so, is not a federal constitutional violation. *Roberson v. Bradshaw,* 198 F.3d 645, 647 (8th Cir. 1999). There is no summary judgment evidence Plaintiff was denied medications or treatment if he was unable to pay. Accordingly, Plaintiff's claim against Defendants in their official capacity relating to the requirement that an inmate pay to see a doctor fails as a matter of law.

The second allegation relates to UCDC's policy of prohibiting the use of prayer rugs. Defendants state this policy is necessary and justified because prayer mats can be used to hide contraband or obstruct detention center staff views of detainee areas. (ECF No. 24, p. 5). However, Defendants have not indicated what, if any, alternative means they provide to inmates as a substitute for prayer rugs. As more fully discussed below, the Court finds there is a question of fact as to whether the policy prohibiting the use of prayer rugs throughout the detention facility without providing an alternative means for Muslims to pray violates Plaintiff's freedom of religion. Consequently, the official capacity claim relating to the prohibition of prayer rugs shall remain for trial.

**B. Retaliation**

Plaintiff alleges Defendant Rice retaliated against him after he refused to have his temperature taken by having another MCDC officer lock down his pod. According to Plaintiff, Defendant Rice then

6

told the inmates in the pod that it was Plaintiff's fault they were being locked down. Plaintiff alleges Defendant Mitcham retaliated against him for filing a grievance concerning the proximity between the shower facilities and the television viewing area. He claims Defendant Mitcham then called the inmates in the pod together, threatened to take the television away, and then informed them it was Plaintiff's fault that he was having to address the situation with the television. In each of these instances Plaintiff alleges the other inmates made threats against him and he feared for his safety.

The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity. *Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007) citing *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994). In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation in order to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994).

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

First, Defendants did not address Plaintiff's retaliation claim against Defendant Rice in their Motion for Summary Judgment. Therefore, this claim shall remain for resolution. As for the claim against Defendant Mitcham, Plaintiff clearly engaged in a protected activity when he submitted a grievance relating to the proximity of the showers to the television viewing area. *See Lewis* at 1028.

7

The Court finds there is a question of fact as to whether Defendant Mitcham's actions constitute an adverse action intended to prevent Plaintiff from submitting additional grievances. Accordingly, Plaintiff's claims for retaliation against Defendants Rice and Mitcham shall proceed to trial.

### C. Religious Freedom

Plaintiff alleges Defendants Rice, Mitcham and K. Smith engaged in conduct that violated his constitutional right to exercise religious freedom. He claims Defendant Rice told UCDC officers he could not receive a "food-tray with no-meat diet…she sent officers to get me…to discuss this matter what type 'muslim are you'". (ECF No.7, p.3). Plaintiff alleges Defendant Mitcham denied him use of his prayer rug and "put my Quran somewhere and waited days later just to give me my Quran… (ECF No. 12, p. 3). As for Defendant K. Smith, Plaintiff claims he would voice his dislike for Muslims and Islam. (ECF No. 7, p. 4).

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972). However, this right is not without limitation. The Supreme Court has recognized "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone*, 482 U.S. at 348. Like with the freedom to receive ideas, "the free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002) (*quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz*, 405 U.S. at 322)); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994). "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004).

8

In order to present a valid First Amendment claim in this context, Plaintiff has the "burden of establishing that the alleged religious belief or ritual in question [use of a prayer mat and Quran, restricted diet] is based on a teaching of the religion [Islam], that [Plaintiff's] belief in the teaching is sincerely held, and that the governmental action in question actually infringe[d] upon [his] free exercise of this belief." *Goff v. Graves,* 362 F.3d 543, 547 (8th Cir. 2004). Defendants have not contested that the use of a prayer mat, a Quran, and a restricted diet are tenets of Islam or that Plaintiff's proclaimed beliefs as a Muslim are not sincerely held. Consequently, the only question remaining is whether some action by Defendants actually infringed upon Plaintiff's free exercise of his belief.

1. **Defendants Rice and K. Smith**

Based on the summary judgment record, the Court is convinced neither Defendant Rice nor Defendant K. Smith engaged in any conduct which violated Plaintiff's right to religious freedom. First, other than the bare bone allegation that Defendant Rice told UCDC officers Plaintiff could not receive a food tray without meat, he has not provided any summary judgment evidence to demonstrate that her statement resulted in him being served a type of meat which his religion prohibits. In addition, Plaintiff has not alleged any discussions he may have had with UCDC officers as a result of Defendant Rice's direction to speak with him about what "type" of Muslim he is placed any burden on his ability to exercise his beliefs.

As for Defendant K. Smith, Plaintiff only alleges he verbally expressed his "dislike" for Muslims and Islam. It is well settled that the use of derogatory language will not, by itself, violate a prisoner's constitutional rights. *Blades v. Schuetzle,* 302 F.3d 891, 805 (8th Cir. 2002) (citing *DeWalt v. Carter*, 224 F. 3d 607, 612 (7th Cir. 2000) (the use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution). In addition, simple verbal harassment, standing alone, does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or

deny a prisoner equal protection of the laws. *See DeWalt* at 612. Verbal threats and name calling are not actionable under Section 1983. *See McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993) (inmate's allegations that prison staff harassed him generally and harassed him in order to dissuade him from filing grievance was not a constitutional violation).

Even if Defendant K. Smith's verbal expressions of his "dislike" for Muslims and Islam could somehow be construed to rise to the level of a constitutional violation, Plaintiff has not demonstrated, nor has he alleged, Defendant K. Smith's statements had any impact on his constitutional right to practice his religion. Accordingly, Plaintiff's claims against Defendants Rice and Defendant K. Smith relating to a violation of his religious freedom fail as a matter of law.

**2. Defendant Mitcham**

Plaintiff alleges Defendant Mitcham denied him the use of his prayer rug and kept his Quran from him for several days.[4] Defendants contend the UCDC's policy of restricting the use of prayer rugs is "reasonably related to security concerns of hiding contraband and concealing employees' view of detainees and areas with the detention facility." (ECF No. 24, p.5). They also argue Plaintiff has not demonstrated any burden to his exercise of religion by not having use of his prayer rug. Here, Plaintiff alleges his prayer rug is "essential to my faith." (ECF No. 12, p. 3). He does not make the same claim about being without his Quran for a few days. In fact Plaintiff's Quran was returned to him. The Court finds Plaintiff has alleged the absence of a prayer rug has caused a burden on his ability to exercise his faith. However, he has failed to do so with respect to his Quran.

The Court must consider four factors to determine if regulation of exercise of religion is reasonable. *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, there must be a valid, rational connection

---

[4] Defendants have not addressed Plaintiff's allegations relating to the unavailability of his Quran for several days other than to state "Inmates are allowed religious manuals such as Islamic Qurans." (ECF No. 24-1).

10

between the prison regulation and the legitimate governmental interest put forward to justify it. Second, a reviewing court must assess whether there are alternative means of exercising the right that remain open to prison inmates. Third, a court must determine the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prisoner resources generally. Finally, the absence of ready alternatives to the prison regulation must be explored. The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable. *Id., see also, Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 913 (N.D. Iowa 2001).

In applying the first factor set forth in *Turner*, the Court agrees that at least in some circumstances a prayer rug poses a security concern for the staff of the UCDC.[5] As for the second and third factors, Defendants have failed to produce any summary judgment evidence to suggest there are alternatives available to Plaintiff to replace his use of a prayer rug and they have not provided the Court with any guidance of the impact an accommodation to Plaintiff's right would have on the guards and other inmates at the UCDC. The final *Turner* factor is whether an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests. Here, Plaintiff has not provided any accommodation recommendations. Accordingly, the Court finds there is a question of fact as to whether Plaintiff has any alternative means available to a prayer rug at the UCDC in order to practice his religion. Accordingly, Plaintiff's claim against Defendant Mitcham relating to the denial of the use of a pray rug shall remain for trial. His claim concerning the absence of his Quran fails as a matter of law.

### D. Discrimination Based on Religion and Race

Plaintiff alleges Defendant Mitcham discriminated against him by denying him use of his prayer rug and keeping his Quran from him for several days. Plaintiff claims:

---

[5]The Court notes that some correctional facilities permit the use of prayer rugs inside individual cells. *See, Sheldon v. Carr,* 2002 WL 32172302 (N.D. Iowa 2002).

> Discrimination I've been subjected to because I'm a out spoken Muslim here in Union county Jail. I see white detainees get their bibles and religious material all the time. The bibles have covers with zippers…pamphlets and even family pictures, book markers. But tell me why as a Muslim they put my Quran, somewhere and waited days later just to give me my Quran…mean while when Families bring bibles to other inmates the Bibles are brought back the same day. What good is my prayer rug in my property, its' in the Facility but I can't have it for what it was intended for…

(ECF No. 12, p. 3).

The Court construes Plaintiff's discrimination claim as one for violation of equal protection. In order to establish an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and the different treatment is based upon either a suspect classification or a "fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) citing *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006). Religion and race are suspect classifications. Only *deliberate* discrimination is actionable under the Equal Protection Clause. *Personnel Administrator v. Feeney*, 442 U.S. 256, 273 (1979); *Washington v. Davis*, 426 U.S. 229, 239-48 (1976). The "unequal treatment of persons who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (internal quotation marks and citation omitted). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but it is most often proved with evidence that similarly situated inmates were treated differently." *Id.*

Here, Plaintiff has alleged white Christians were provided their religious materials without delay while he, a black Muslim, was denied the use of his prayer rug and forced to go without his Quran for days for no apparent reason. Defendants did not address Plaintiff's claims of equal protection in the Motion for Summary Judgment. Consequently, these claims shall remain for trial.

### E. Conditions of Confinement

Plaintiff alleges he was subjected to unlawful conditions of confinement including unlawful isolation where he was placed in a cell that had water coming under the door, contained bugs, feces, food matter, mold, and had unclean food port doors (ECF No. 7, p. 5). He also claims he was denied recreational time, access to a phone, kiosk and law library and his food was exposed to open air. In addition he claims:

> The hair clippers don't' get cleaned at all. Which put bumps on my head and face. The place where they cut the hair is never cleaned-up. The toe nail clippers are placed in the same box as the hair clippers. Now I have fungal raches on my body. These items are never cleaned. Inmates put clothes out to dry on the tables we eat off…

(ECF No. 7, p. 6).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks

omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

  1. **Unlawful isolation**

Plaintiff alleges he was unlawfully placed in isolation after complaining about his food. (ECF No. 1). The summary judgment evidence demonstrates on August 22, 2016, Plaintiff was placed in a cell at the Nurse's Station so that his meal trays could be monitored and checked to ensure he was receiving proper and sanitary vegetarian meals. (ECF No. 24-2). The only other record of an incident involving the isolation of Plaintiff occurred on January 2, 2017, when he was placed in isolation because he had a boil on his body that was leaking bodily fluid. (ECF No. 24-4). According to the UCDC's records, Plaintiff was released from isolation on January 10, 2017, after the boil was healed. (ECF No. 24-5). The summary judgment evidence supports a finding that Plaintiff was not moved into isolation to be punished but was moved to monitor his food and to prevent the spread of infection. In addition, there is no evidence to support Plaintiff was deprived of any single identifiable need during the isolation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for unlawful isolation.

  2. **Unsanitary Conditions**

Plaintiff is entitled to "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Here, the violations alleged by Plaintiff relating to the condition of his cell and unclean nail and hair clippers are were not severe enough or of a sufficient duration to rise to the level of a constitutional violation. "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard* at 137 (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). According to the UCDC's policy, detainees are given the

opportunity to clean their cells at least five days a week and it is the detainees' responsibility to keep the cells cleans. (ECF No. 24-6).

Plaintiff was in a cell D-1 for eight days and in the Nurse's cell for less than 48 hours. (ECF No. 24-3). The limited amount of time Plaintiff may have been exposed to any alleged unclean and uncomfortable conditions is not enough to establish unlawful conditions of confinement. Moreover, although Plaintiff complains his food tray was exposed to the open air prior to being served to him, he does not indicate how he was injured by this condition nor does has he demonstrated how often this occurred. While Defendants did not address the issue directly, Plaintiff has only made unsubstantiated allegations regarding an infection and a rash he claims he contracted from dirty nail clippers and hair clippers. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims relating to insanitary cells and personal hygiene.

### 3. Denial of access to recreation, phone and kiosk

The Court also finds no constitutional violation regarding a denial of recreation or access to a phone or kiosk. Plaintiff has not identified the length of time he was forced to go without physical activity nor has he identified any adverse health effects from being without recreation. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) ("lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened"). Likewise, Plaintiff has not indicated how long he was without access to a phone or kiosk nor has had identified any consequences relating to his lack of access to these items. Defendants are therefore entitled to summary judgment on these claims.

### 4. Denial of access to a law library

Although Defendants did not address Plaintiff's allegations regarding his lack of access to a law library, the Court will rule on the claim *sua sponte*.

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

However, an inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993).

Here, Plaintiff simply makes an unsubstantiated allegation he was denied access to a law library. Because Plaintiff has not alleged any injury, his claim fails as a matter of law.

**F. Excessive Force**

Plaintiff claims he was the victim of excessive force on August 22, 2016, when Defendant C. Smith twisted his arm behind his back with enough force to dislocate his shoulder and put the handcuffs on so tight that marks could be seen on his wrists five hours after the cuffs were removed. Plaintiff also

alleges even though the handcuffs were on for only six minutes, he experienced "pain like I have never felt before". (ECF No. 7, p. 3).

From the summary judgment record it appears this incident occurred while Plaintiff was a pre-trial detainee. "Because [Plaintiff] was a pre-trial detainee at the time of the alleged violation of [his] constitutional rights, we analyze [his] claim against [Defendants] under the Fourteenth Amendment, rather than the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citations omitted). Therefore, the objective reasonableness standard should be used in the analysis of Plaintiff's excessive force claim. *See Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir. 1989).

The evaluation of excessive force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments, rely on the same objective reasonableness standard as arrestee claims grounded in the Fourth Amendment. *Andrews v. Neer,* 253 F.3d 1052, 1060 (8th Cir. 2001) (citing *Schoemehl,* 878 F.2d at 1048-9). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials acted in an objectively reasonable manner in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court should consider the reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Finally, the Court should consider whether the totality of the circumstances justifies the use of force. *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir. 1990).

Defendants argue the force used by Defendant Smith against Plaintiff was reasonable and necessary on August 22, 2016, because Plaintiff disregarded multiple officers' orders and walked away from officers. They also submitted video footage to support their claim. However, a review of the video footage does not show what transpired when Defendant Smith handcuffed Plaintiff. In addition, it is

unclear to the Court what orders Plaintiff disregarded leading up to the incident. Consequently, the Court finds there are genuine issues of disputed fact with respect to Plaintiff's claim of excessive force against Defendant C. Smith. Accordingly, this claim shall proceed to trial.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 23) is **GRANTED in PART and DENIED in PART.**

The Motion is **GRANTED** as to: 1) Plaintiff's official capacity claim relating to payment of medical expenses for a doctor visit; 2) Plaintiff's personal capacity claims against Defendants Sheri Rice and Kevin Smith for violations of his religious freedom; 3) Plaintiff's personal capacity claim against Defendant Richard Mitcham relating to a violation of his religious freedom for withholding his Quran and 4) all of Plaintiff's condition of confinement claims. These claims are **DISMISSED WITH PREJUDICE**.

The Motion for Summary Judgment is **DENIED** as to: 1) Plaintiff's official capacity claim regarding the denial of his prayer rug; 2) Plaintiff's personal capacity claims against Defendants Sheri Rice and Richard Mitcham for retaliation; 3) Plaintiff's personal capacity claims against Defendant Richard Mitcham for denial of a prayer rug; 4) Plaintiff's personal capacity claim against Defendant Mitcham for equal protection; and 5) Plaintiff's personal capacity claim against Defendant Chris Smith for excessive force. These claims shall remain for resolution at trial.

**IT IS SO ORDERED** this **12th day of March 2018**.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE